**CONTINENTAL BANK, N.A., Plaintiff,**

**v.**

**Sheldon MODANSKY, Aaron Modansky, Ajayem Investors Corp., Defendants.**

**No. 90 C 1696.**

United States District Court,
N.D. Illinois, E.D.

July 9, 1991.

See also 755 F.Supp. 812.

Nathan P. Eimer, David M. Schiffman, John M. Czarnetzky, Sidley & Austin, Chicago, Ill., for plaintiff.

Leonard Zack, M. Scott Vayer, New York City, Sarah R. Wolff, Sachnoff & Weaver, Ltd., Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

This is a case of guaranty agreements. Continental Bank, N.A. ("Continental") seeks to enforce these agreements against defendants Sheldon Modansky, Aaron Modansky, and Ajayem Investors Corporation ("Modanskys") in order to recover approximately $9,765,575, together with costs.

The facts alleged by the parties follow the usual pattern: Continental extended loans, in the form of lines of credit, to four lumber companies ("borrowers"). The Modanskys secured the loans. They signed agreements allegedly guaranteeing payment of all amounts owed to Continental by the borrowers, including interest and the costs of collection. Borrowers became insolvent. Continental demanded immediate payment from the Modanskys. Because no payment was forthcoming, Continental filed suit. In response to Continental's claims, the Modanskys have asserted numerous counterclaims and affirmative defenses. Continental moves to dismiss the counterclaims and defenses in toto. The court grants Continental's motion in part and denies it in part.

## I. Counterclaims

The affirmative defenses and counterclaims alleged by the Modanskys raise many of the same issues.[1] The counterclaims include—

---

1. The guaranty agreement provides that the guaranty "shall be construed in accordance with

I:    Breach of fiduciary duties to borrowers

II:    Tortious duress of borrowers

III:    Breach of implied duty of good faith towards borrowers

IV:    Breach of U.C.C. duty of good faith towards borrowers and Modanskys

V:    Breach of borrowers' loan agreements

VI:    Breach of implied promise to borrowers

VII:    Negligence towards borrowers

Continental argues that the Modanskys lack standing to bring these counterclaims. It seizes on the fact that each of these claims is based on an injury that was done to the borrowers, not to the Modanskys as guarantors. The rules of standing require that a party suffer a direct injury in order to bring suit. "[E]ven when the plaintiff has alleged injury ..., the plaintiff ... must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Here, although the Modanskys assert in their brief in opposition that they have suffered a direct injury, they fail to identify it. They may very well have suffered an injury if Continental committed the alleged acts since the Modanskys were also officers and shareholders of the borrowers. But, in their capacity as *guarantors*, they would only have suffered an indirect injury.[2]

■ Looking to surety[3] law, in general, "[t]he surety may not plead the principal's independent cause of action as a defense against a creditor...." 10 S. Williston on Contracts § 1214 at 716 (3d ed.1967); *Continental Group, Inc. v. Justice*, 536 F.Supp. 658, 661 (D.Del.1982). It is the Modanskys' claim, that an exception should be made where borrowers are insolvent, as in this case.[4] They rely on *Schenley Affiliated Brands Corp. v. MarSalle, Inc.*, 703 F.Supp. 744 (N.D.Ill.1989) for support. In *Schenley*, the court did allow a guarantor to bring the claims of an insolvent debtor as setoffs against a creditor. In reaching its decision, however, the court conceded that "there is no clear statement from the Illinois courts as to whether a guarantor may raise the claims of an insolvent principal debtor." *Id.* at 746. The court seems to have been swayed by the fact that an exception for an insolvent debtor has not yet been rejected.

Allowing the guarantor to bring such a claim, though, flies in the face of federal bankruptcy law. Under 11 U.S.C. § 541(a)(1), whatever legal or equitable interests the debtor has in property at the commencement of a bankruptcy case is considered property of the bankruptcy estate. The interests become property of the estate notwithstanding any applicable nonbankruptcy law. 11 U.S.C. § 541(c)(1) "It is ... intended that *all* interests of the debtor in rights of action be included as property of the estate under section 541(a)." 4 Collier on Bankruptcy ¶ 541.10 at 541–66 (15th ed.1991); *In Re Interpictures, Inc.*, 86 B.R. 24, 28 (Bkrtcy. E.D.N.Y.1988) ("the right to redress wrongs inflicted upon the debtor is property of the estate"). To allow guarantors like the Modanskys, who are only some of borrowers' creditors, to assert causes of action which could accrue to the benefit of all creditors is to promote inequity. The borrowers' causes of action should more

---

and governed by the laws of the State of Illinois." "Illinois like other jurisdictions permits parties to agree to a choice of law." *FIMSA, Inc. v. Unicorp Fin. Corp.*, 759 F.Supp. 1297, 1300 n. 6 (N.D.Ill.1991). Therefore, Illinois law will be applied in this case.

**2.** The Seventh Circuit concurs on this point: Guarantors are contingent creditors. If the firm stiffs a creditor, that creditor can collect from the guarantor; the guarantor succeeds to the original creditor's claim against the firm. We know that creditors cannot recover

directly for injury inflicted on a firm, so guarantors as potential creditors likewise cannot recover.

*Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*, 877 F.2d 1333, 1336 (7th Cir.1989).

**3.** In Illinois, surety includes guarantor. Ill.Rev. Stat. Ch. 26, para. 1–201(40) (1989).

**4.** Borrowers filed for Chapter 11 protection in the Southern District of New York on November 4, 1988.

properly be brought by the debtor-in-possession or the trustee on behalf of the estate, so the benefits can be shared by all. Indeed, the Seventh Circuit has frowned on efforts to divert "the assets" of a debtor "to pay off one set of creditors ... while keeping the proceeds out of the hands of the firm's other creditors." *Mid–State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*, 877 F.2d 1333, 1336 (7th Cir.1989). *See, e.g., Koch Refining v. Farmers Union Central Exch., Inc.*, 831 F.2d 1339, 1343 (7th Cir.1987) (cause of action for breach of fiduciary duty becomes property of the estate which the trustee alone has the right to pursue after the filing of a bankruptcy petition), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988).

Further, the laws of bankruptcy address the concerns expressed in *Schenley*. The guarantor will still have recourse against the principal debtor even without the set-offs. When the guarantor pays the creditor, the guarantor steps into the shoes of the creditor to pursue the creditor's claim against the debtor. The right to bring causes of action on behalf of all creditors, then, should rest with the bankruptcy estate.

Nor are these personal claims which should more properly be brought by the Modanskys. "A cause of action is 'personal' if the claimant himself is harmed and no other claimant or creditor has an interest in the cause." *Koch Refining*, 831 F.2d at 1348. If Continental engaged in the alleged actions, all the creditors would have been hurt by the diminution of the borrowers' assets. Moreover, the Modanskys have not personalized the claims by contending that Continental engaged in actions which injured their guaranty agreements. In their counterclaims, the Modanskys are not alleging that Continental breached any fiduciary duty towards them, subjected them to duress[5] or negligently gave them advice.

Additionally, the Modanskys rely on *Royal Palm Savings Ass'n v. Pine Trace Corp.*, 716 F.Supp. 1416 (M.D.Fla.1989) to support their position. In *Royal Palm Savings Ass'n*, the court permitted a guarantor to bring independent causes of action presumably based on wrongs to the debtor, finding that "nothing in the Guaranty could serve as a waiver of [guarantor's] rights to pursue his independent causes of action...." *Id.* at 1419. The Modanskys' case, though, is different in that their guaranty agreements contain something which might serve as a waiver of these rights. The guaranty agreements provide that:

> For the purposes of this guaranty, Liabilities shall include all obligations of the Debtor to the Bank, notwithstanding any right or power of the Debtor or anyone else to assert any claim or defense as to the invalidity or unenforceability of any such obligation, and no such claim or defense shall affect or impair the obligations of the [guarantor].

For these reasons, the court declines to adopt the reasoning of the Modanskys and dismisses counterclaims I–III and V–VII.

■ The remaining counterclaim, counterclaim IV, avoids the pitfall of being based on an indirect injury by also claiming that the Modanskys were injured by Continental's breach of the U.C.C. duty of good faith. The court assumes that the Modanskys are referring to the U.C.C. as applied to their guaranties. The question is whether the U.C.C. applies to guaranty agreements. Hornbook law states that "[a] guaranty made by a separate writing and not appearing on commercial paper is governed by the non-code law relating to suretyship. 1 Anderson, Uniform Commercial Code § 1:1–103:64 at 105 (1981). The guaranty agreements in this case are separate contracts between the Modanskys and Continental. Therefore, the obligations imposed by the U.C.C. are not applicable. *See Ishak v. Elgin Nat'l Bank*, 48 Ill.

---

5. The Modanskys might claim that duress of the borrowers has an effect on the validity of the loan agreements and, thus, their guaranty agreements. However, the Modanskys are not even claiming that the duress occurred during the formation of the loan agreements. The duress allegedly came after borrowers and Continental negotiated an additional loan. Accordingly, defendants cannot claim that the loan agreements for which they acted as guarantors are void or voidable.

App.3d 614, 6 Ill.Dec. 630, 632, 363 N.E.2d 159, 161 (1977) (U.C.C. not applicable to guaranty because guaranty was a separate, binding contract entered into between plaintiff and bank). This counterclaim, then, is also dismissed.

## II. Affirmative Defenses

Many of the affirmative defenses proffered by the Modanskys suffer the same fate as the counterclaims since the defenses are also based on injuries which belong to borrowers. Ten affirmative defenses are alleged—

1. Continental failed to mitigate its damages.
2. Continental breached its fiduciary duty to the Modanskys.
3. Continental breached its fiduciary duty to borrowers.
4. Continental breached the covenant of good faith and fair dealing which it owed to borrowers.
5. Continental breached the covenant of good faith and fair dealing which it owed to the Modanskys.
6. Continental made material misrepresentations to borrowers on which borrowers relied to their detriment.
7. Continental breached the duty of care owed to the Modanskys.
8. Continental breached the duty of care owed to borrowers.
9. Continental has unclean hands.
10. Continental has exerted undue influence and duress over borrowers.

■ The court finds merit in two of these defenses. In the first defense, the Modanskys broadly allege a failure to mitigate damages. Continental tries to characterize this defense narrowly, as an impairment of collateral claim. The Modanskys in turn characterize their defense as a "material change" defense. In effect, they argue that Continental's handling of borrowers' assets substantially increased their risk, made it less likely that the borrowers' debt would be paid off, and thus, caused a difference in their guaranty arrangements. To bring this claim, it must be shown that a material change occurred in the creditor-

debtor relationship and the creditor consented to the change. *Morris v. Columbia Nat'l Bank of Chicago,* 79 B.R. 777, 783 (N.D.Ill.1987). The current record contains allegations of material change and provides some evidence that Continental consented to changes made in the borrowers' operations. Therefore, this defense may stand.

■ The court also finds merit in the fifth defense. The Modanskys claim that Continental breached the covenant of good faith and fair dealing which it owed them. From the Modanskys' allegations, the court assumes that the Modanskys are referring to Continental's handling of the collateral. "The contract of suretyship imports entire good faith and confidence between the parties in regard to the whole transaction...." *St. Charles Nat'l Bank v. Ford,* 39 Ill.App.3d 291, 349 N.E.2d 430, 434 (1976). *See Zick v. Verson Allsteel Press Co.,* 623 F.Supp. 927, 929 (N.D.Ill.1985) ("good faith is an obligation to refrain from acts or omissions tending to defeat the justified and reasonable expectations of the parties").

The duty of good faith may require that the creditor inform the guarantor of "circumstances which materially increase his risk as guarantor." *McHenry State Bank v. Y & A Trucking, Inc.,* 117 Ill.App.3d 629, 73 Ill.Dec. 485, 489, 454 N.E.2d 345, 349 (1983). Continental was obliged to deal with the Modanskys in good faith in its performance and its enforcement of the guaranty agreements. The Modanskys have alleged instances involving borrowers' assets, such as the inventory purchasing plan and the closure of certain of borrowers' operations, where Continental could have acted in less than good faith. These allegations are adequate to state a defense. Affirmative defense five, then, also stands.

■ The Modanskys assert two additional defenses which contain allegations of injury to themselves as guarantors. In defense two, they allege that Continental breached its fiduciary duty towards them. As a matter of law, a fiduciary duty does not exist between a creditor and a guarantor. *Farmer City State Bank v. Guing-*

*rich,* 139 Ill.App.3d 416, 94 Ill.Dec. 1, 6, 487 N.E.2d 758, 763 (1985). However, such a fiduciary relationship may arise based on the facts of a particular case. The facts giving rise to a fiduciary relationship must be pled and proved by clear and convincing evidence. *Id.* In this case, the Modanskys have not provided any facts whatsoever tending to show that they as guarantors and Continental ever maintained a fiduciary relationship. The Modanskys, in their capacity as guarantors, did not enjoy a confidential relationship with any of Continental's officers. Nor do the Modanskys allege that they relied on the investment and legal advice of Continental. On the contrary, the sparsity of the record tends to support the conclusion that the parties dealt at arms-length when negotiating the guaranty agreements. Accordingly, the second affirmative defense is stricken.

In much the same vein, the Modanskys allege in defense seven that Continental breached a duty of care owed them. The Modanskys provide absolutely no factual allegations in support of this claim. To the extent that the Modanskys are referring to a duty arising from the alleged fiduciary relationship between themselves and Continental, the court has already addressed and dismissed this claim. To the extent that the Modanskys are making assertions more along the line of the good faith defense, the court finds the duty of care defense to be duplicative. Therefore, it is stricken.

In affirmative defenses three, four, and eight, the Modanskys are again basing their defenses on injuries allegedly suffered by borrowers. These defenses are ones which could be brought as independent causes of action by the borrowers. "[W]here the principal has an independent cause of action against the creditor, the surety usually may not make use of it as a defense where sued alone." Stearns, The Law of Suretyship § 7.1 at 200 (1951). Therefore, these defenses are stricken for lack of standing. The estate of an insolvent debtor shall have the benefit of any defense available to the debtor as against any entity other than the estate. 11 U.S.C. § 558.

Under some circumstances, the claims in defenses six and ten, even though based on injuries to debtors, could be raised as affirmative defenses by guarantors. For instance, if the alleged actions on the part of the creditor would void the loan agreements with the debtors, the guarantors might be discharged. *See Restatement of Security* § 118(1) at 314 (1941) (where the principal has been induced to assume an obligation by the fraud or duress of the creditor, the surety is not liable to the creditor). In this case, though, these claims are not the type which go to the heart of the loan agreements and call into question the Modanskys' guaranties. In defense ten, the Modanskys are not alleging duress or fraud in the original formation of the loan agreement. Rather, the alleged duress took place in subsequent dealings between the borrowers and Continental. In defense six, the alleged material misrepresentations also occurred in the course of Continental's treatment of borrowers following formation of the contracts. These defenses, then, have no bearing on the guaranty agreements and, therefore, cannot be asserted by the Modanskys.

As for the ninth defense, unclean hands, some courts in Illinois have found that an unclean hands defense may be brought in law as well as equity. Those cases, though, dealt with issues having closer ties to equity. *See Urecal v. Masters,* 413 F.Supp. 873, 876 (N.D.Ill.1976) (unclean hands defense allowed in conjunction with an unfair competition claim); *F.E.L. Publications v. Catholic Bishop of Chicago,* 506 F.Supp. 1127, 1137 (N.D.Ill.1981) (unclean hands defense associated with claims of unfair competition and with copyright infringement).

Moreover, unclean hands is an affirmative defense, and the burden of making sufficient allegations is on the party asserting it. *Pierce v. Apple Valley, Inc.,* 597 F.Supp. 1480, 1485 (S.D.Ohio 1984). The Modanskys have not upheld their burden here since the court cannot discern the basis for the Modanskys' claim from their pleadings or brief in opposition. This defense, then, is stricken.

## CONCLUSION

Although the court has dismissed all of the Modanskys' counterclaims and a good many of their defenses, a few do remain. The Modanskys may still assert in their defense that a material change occurred in dealings between Continental and borrowers and that Continental breached the covenant of good faith owed them. Accordingly, counterclaims I–VII are dismissed and affirmative defenses two-four and six-ten are stricken. Affirmative defenses one and five stand.

IT IS SO ORDERED.